IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| BERNARD J. SACHS, Personal Representative of the Estate of DALINDA C. BADENHOOP, Deceased, and MARIEL GREENSTEIN, Individually, and SANDY KLAUS, Individually, Plaintiffs, v. LORILLARD TOBACCO CO., Defendant. | Civil Action No. JFM-01-CV-0152 Judge J. Frederick Motz |

**DEFENDANT LORILLARD TOBACCO COMPANY'S
MOTION FOR JUDGMENT AS A MATTER OF LAW
AT THE CLOSE OF PLAINTIFFS' CASE**

Pursuant to Federal Rule of Civil Procedure 50(a), defendant Lorillard Tobacco Company moves for judgment as a matter of law in its favor on all of Plaintiffs' claims. Plaintiffs have failed to present sufficient evidence demonstrating that the use of crocidolite asbestos in the filter of Lorillard's Kent cigarettes between March 1952 and May 1956 was unreasonable; and, there is not sufficient evidence that the asbestos from the original Kent filter caused Mrs. Badenhoop's mesothelioma. Therefore, Lorillard is entitled to judgment as a matter of law.

**I.     INTRODUCTION**

Federal Rule of Civil Procedure 50(a) provides that if during a jury trial a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party, the court may determine the issue against that party and

may grant a motion for judgment as a matter of law against that party with respect to a claim or defense. Fed. R. Civ. P. 50(a)(1). Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. *Singer v. Dungan*, 45 F.3d 823, 826 (4th Cir. 1995). The question on a motion for judgment as a matter of law is whether the trial record evinces a "legally sufficient evidentiary basis for a reasonable jury" to reach its verdict. *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 181 (4th Cir. 1998); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). The court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." *Id.* (quoting *Lovelace v. Sherwin Williams Co.*, 681 F.2d 230, 242 (4th Cir. 1982).

Plaintiffs have not produced sufficient evidence to support essential elements of their claims, and judgment as a matter of law in favor of Lorillard is therefore proper.

## II. ARGUMENT

### A. The Use of Crocidolite Asbestos in the Filter of Kent Cigarettes Between 1952 and 1956 Was Not Unreasonable.

For each of Plaintiffs' claims – strict liability design defect and failure to warn and negligent design defect and failure to warn – the date Lorillard stopped using asbestos in the Kent filter, May 1956, is the bright line cut-off for judging the reasonableness of Lorillard's conduct in light of the state of knowledge at the time. *See Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1165 (4th Cir. 1986) (citing *Troja v. Black & Decker Mfg. Co.*, 62 Md. App. 101, 109, 488 A.2d 516, 520 (1985)).

Plaintiffs' only expert who opined that the use of asbestos in a filter media for cigarettes before May 1956 was unreasonable was Dr. John Dement. (*See* Trial Transcript ("Tr."), 4/17/2003, p. 30.) Dr. Dement, however, did not testify to any familiarity with filter

media or filtration techniques. There was no foundation for Dr. Dement's opinion that the use of asbestos filter media was unreasonable in light of what was known prior to May 1956, an objection which Lorillard raised at trial. (*See id.*) Moreover, Dr. Dement's conclusory opinion was not supported by the testimony of Plaintiffs' witness, Dr. William Smith. Dr. Smith stated that he "knew asbestos was used as a filter material for drugs and for liquid preparations of drugs and also for drinks," and that in the 1950s, asbestos "was a common filter material." (*See* Tr., 4/16/2003, P.M. Session, Videotape Played, Deposition of Dr. William Smith, 5/7/97, pp. 43-44.)

There is insufficient evidence in the record that in light of what was generally known prior to May 1956 that the use of crocidolite asbestos in the filters of Kent cigarettes was unreasonable. Judgment should be entered in favor of Lorillard on all of Plaintiffs' claims.

**B.    The Original Kent Cigarette With the Asbestos-Containing Filter Did Not Cause Mrs. Badenhoop's Mesothelioma.**

Causation is an essential element of each of Plaintiffs' claims. *See Eagle-Picher Ind., Inc. v. Balbos*, 336 Md. 179, 213-214, 604 A.2d 445, 461-62 (1992); *Phipps v. General Motors Corp.*, 278 Md. 337, 344, 363 A.2d 955, 958 (1976). In the absence of sufficient evidence of causation, Plaintiffs' claims must fail.

**1.    Original Kent Cigarettes Did Not Release Asbestos Fibers in Sufficient Quantity to Cause Disease.**

The only evidence presented by Plaintiffs concerning the possible release of asbestos fibers from the filter of the original Kent cigarette was the testimony of Douglas Hallgren and the photomicrographs from Fullam Laboratories. Yet, Mr. Hallgren could not quantify the amount of asbestos fibers allegedly released from the Kent filter, nor could he definitively say the fibers shown in the photomicrographs were crocidolite fibers from Kent

cigarettes. He stated only that "on an absolute basis to say there was a milligram or one hundred milligrams or something coming out, we did not have that ability." (Tr., 4/15/2003, Vol. 2, p. 31.) Mr. Hallgren acknowledged the data was only on the frequency of the occurrence of particles, not how many particles. (*Id.* at p. 36.) Finally, he admits that he "gave up on trying to come up with a rational way of quantifying the amount of material" which appeared on the plates. (*Id.* at p. 50.) In any event, the number of particles seen on the grids was small, according to Mr. Hallgren. (*Id.* at p. 76.) Regardless of the numbers, no chemical analysis was done to determine whether the particles observed were, in fact, asbestos, and Mr. Hallgren conceded that under the electron microscope, talc, which may have been present in the hoses used to obtain the samples, can look just like asbestos. (*Id.* at pp. 66-70.)[1]

Plaintiffs also offered into evidence a letter dated April 26, 1954, from P. Lorillard's Director of Research H.B. Parmele to W.J. Halley, President of P. Lorillard. In that letter, Mr. Parmele noted that Dr. Fullam had recently examined Kent smoke and "confirmed Mrs. Revere's earlier observations, namely that such smoke contained traces of mineral fiber." *See* Plaintiffs' Exhibit 205. There is no other evidence about or quantification of Mrs. Revere's findings.

This is the sum total of Plaintiffs' evidence that asbestos was released from the filter of original Kent cigarettes. In short, Plaintiffs have not offered sufficient evidence that the original Kent cigarette with the asbestos-containing filter released anything other than small, trace amounts of material which may or may not have been asbestos, and Plaintiffs have introduced no evidence that the Kent filter released asbestos in amounts sufficient to cause disease.

---

[1]    Plaintiffs' expert Dr. John Dement relied on the work done by Fullam Labs, but he gave no independent testimony concerning fiber release. (Tr., 4/17/2003, p. 39.)

4

2. **Background Exposure to Asbestos Does Not Cause Disease, and Mrs. Badenhoop Had Only Background Levels of Asbestos in Her Lung Tissue.**

Plaintiffs have produced no evidence that low-level exposure to asbestos, consistent with levels found in the background or ambient air, is sufficient to cause asbestos-related disease, including mesothelioma. Each of Plaintiffs' experts conceded that background asbestos exposure does not cause disease, including mesothelioma. Dr. Brody acknowledged that an average person who does not work with asbestos and who just breathes the ordinary air would be expected to have as many as a hundred million asbestos fibers in their lungs. (*See* Tr., 4/15/2003, Vol. II, pp. 108-109.) Dr. Brody also agreed that for such a person there is no established risk of any asbestos-related disease, including mesothelioma. (*Id.* at 109-110.)

Dr. Dement stated on the one hand, and quite unequivocally, that "any exposure above background exposure carries with it risk." (Tr., 4/17/2003, p. 36.) He then sought to differentiate "background risk of mesothelioma" and "background exposure" while acknowledging that "[s]cience cannot say what portion of that background risk of mesothelioma is actually due to the background of exposure." (*Id.* at 55.) Regardless, Dr. Dement ultimately stated that "[a]ny exposure above background carries excess risk." (*Id.*)

Dr. Hammar agreed that asbestos can be found in the ambient air and that ordinary air is sometimes a source for the asbestos found in people's lung tissue. (Tr., 4/22/2003, A.M. Session, p. 63.) Furthermore, Dr. Hammar agreed that exposure to asbestos in the ambient air does not increase the risk of developing any asbestos-related disease. (*Id.* at 64.) And he agreed that exposure to something more than background level of asbestos is needed to cause mesothelioma. (*Id.* at 66.) Moreover, Dr. Hammar agreed that if you do not find an above

5

background level of asbestos, then you cannot attribute a person's disease to asbestos. (*Id.* at 71.)

On this issue, Plaintiffs' expert Dr. Abraham stated, as to the question of whether or not asbestos is a cause of mesothelioma, "that translates into, did this person have above background exposure." (Tr., 4/23/2003, A.M. Session, p. 33.)

With their experts conceding that background exposure to asbestos does not cause mesothelioma, Plaintiffs sought unsuccessfully to suggest that the levels of asbestos fiber found in the fiber burden analysis of Mrs. Badenhoop's lung tissue showed above-background asbestos exposure that caused her disease. The fiber burden evidence, however, was that 3,125 fibers per dry gram of crocidolite were found in Mrs. Badenhoop's lung tissue. (Tr., 4/22/2003, A.M. Session, p. 76.) Yet, Dr. Hammar agreed that he has used a value of 10,000 fibers per dry gram to define background crocidolite exposure. (*Id.* at 80.) And he agreed that various other researchers have used values ranging from Professor Pooley's 100,000 fibers per dry gram of crocidolite (*id.* at 81), to Dr. Churg's 1982 study of 11,000 fibers per dry gram of crocidolite and amosite (*id.* at 88), to Dr. Churg's 1984 study of 10,000 fibers per dry gram, amosite and crocidolite (*id.* at 91) – a value which Dr. Churg reported again in his 1991 textbook (*see id.* at 94) and again in his 2002 textbook (*see id.* at 96). Even in Dr. Hammar's own studies, the lowest level of crocidolite found was 20,000 fibers per dry gram. (*Id.* at 95-96.) Finally, Dr. Hammar acknowledged that a study done in East Texas by his colleague Dr. Dodson, in which there was an attempt to ascertain the background of asbestos in a rural population of all ages, the average person over the age of 50 had 16,500 fibers per dry gram of crocidolite in their lung tissue, while the average for all participants in the study was 3,900 fibers per dry gram. (*Id.* at

98-100.) Dr. Hammar also admitted that it is fair to average samples in a fiber burden to get an overall average result. (*Id.* at 75.)

Dr. Abraham's testimony on the issue of what constitutes background was consistent with Dr. Hammar's. Dr. Abraham testified that "for things like amosite and crocidolite, the background has been reported at about up to 10,000 fibers per gram dry lung." (Tr., 4/23/2003, A.M. Session, p. 31.)

Since the original Kent cigarette could have released asbestos fibers only at background levels or below, and since background exposure to asbestos does not cause mesothelioma, original Kent cigarettes with the asbestos-containing filter could not have been a substantial contributing factor to Mrs. Badenhoop's disease. Plaintiffs' experts' conclusions to the contrary were not supported by the evidence. No jury could reasonably conclude from this evidence that crocidolite asbestos was a substantial factor in causing Mrs. Badenhoop's disease. Thus, Plaintiffs have failed to establish that Lorillard's Kent cigarettes were a substantial factor in causing Mrs. Badenhoop's mesothelioma, and Lorillard is entitled to judgment as a matter of law.

## III. <u>CONCLUSION</u>

Plaintiffs did not establish that the use of crocidolite asbestos in the filter of Kent cigarettes between 1952 and 1956 was unreasonable, nor did Plaintiffs establish that original Kent cigarettes with the asbestos-containing filter caused Mrs. Badenhoop's mesothelioma, an essential element for all of their causes of action. Lorillard requests that judgment as a matter of law be granted in its favor as to all of Plaintiffs' claims.

Respectfully submitted,

_____
Roger C. Geary
James E. Berger
Shook, Hardy & Bacon, L.L.P.
One Kansas City Place
1200 Main Street
Kansas City, Missouri   64105

Kathleen M. McDonald
Kerr McDonald, LLP
31 Light Street, Suite 400
Baltimore, Maryland   21202

ATTORNEYS FOR DEFENDANT
LORILLARD TOBACCO COMPANY

A copy of the foregoing was hand delivered this 24th day of April 2003, to:

John Amato, IV Esq.
Goodman, Meagher & Enoch, LLP
111 N. Charles Street, 7th Floor
Baltimore, MD   21201-3892

John Herrick, Esq.
Ness Motley P.A.
28 Bridgeside Boulevard
P. O. Box 1792
Mount Pleasant, South Carolina   29465

_____
James E. Berger